564 So.2d 559 (1990)
U.S. FOUNDRY & MANUFACTURING COMPANY and Gallagher Bassett Insurance Service, Appellants,
v.
Jose SERPA, Appellee.
No. 89-924.
District Court of Appeal of Florida, First District.
July 16, 1990.
Steven Kronenberg, of Adams, Kelley, Kronenberg & Kelley, Miami, for appellants.
*560 Renee R. Pelzman, of Pelzman & Ruska, Coral Gables, for appellee.
SHIVERS, Chief Judge.
The employer/carrier (E/C) appeal an order awarding permanent total disability (PTD) benefits. We reverse. Claimant is a 53-year-old, Spanish speaking Cuban immigrant who came to Florida in 1982. In Cuba he worked as a welder and U.S. Foundry hired him in that capacity in 1983. In April 1985 he suffered an industrial accident damaging cartilage in his right knee.
In May 1985 Dr. Nadler performed arthroscopic surgery, at which time he found evidence of arthritis and a small tear of the anterior portion of the medial meniscus. After two weeks away from work, claimant returned to welding work with U.S. Foundry. A few months later claimant was transferred to lighter work in the tool room and then was discharged in August 1985 because the tool room job was no longer needed.
The carrier paid temporary total disability and wage loss benefits and provided rehabilitation counseling services. In August 1987 U.S. Foundry informed claimant's rehabilitation counselor that two possible positions were soon to open for claimant but in December 1987, before claimant could be placed, he underwent further surgery on his injured knee. Following this surgery, Dr. Nadler believed claimant was at MMI and that he could return to light duty work that restricted standing or walking to one to two hours, lifting to ten to twenty pounds, limited pushing and pulling and no repeated bending or climbing. Based on the AMA guidelines, he gave claimant a four percent permanent impairment rating to the body as a whole. He also felt that claimant was not PTD and that it would be in claimant's best interest to do some type of work.
In October 1988 the employer offered claimant a job as a security guard. Dr. Nadler believed claimant was capable of doing this job. At hearing claimant said that he did not accept the security guard job because he felt that U.S. Foundry was not acting in good faith and because they had fired him once already. He also felt that because he lacked any training as a security guard and did not know how to handle guns he was not qualified to perform the job.
The two rehabilitation counselors assisting claimant felt he was employable even though their efforts at placing claimant had been fruitless.
The judge of compensation claims (JCC) awarded claimant PTD benefits, finding that claimant's rehabilitation counselors were unable to place claimant in suitable employment within his restrictions and abilities. In finding claimant PTD, the JCC cited cases which stand for the proposition that a causal relationship can be found between the incapacity to earn and an industrial injury when there is evidence that a claimant is unable to continue the work in which he has training and experience because of the disabling effects of the injury. E.g., Koger v. Sheraton Inn, 527 So.2d 284 (Fla. 1st DCA 1988). This proposition has been applied to establish causation, but it has not been applied to establish a blanket rule that a claimant's inability to continue work in which he has training and experience because of an injury necessarily entitles him to PTD benefits. See Koger; Holiday Inn v. Sallee, 496 So.2d 227 (Fla. 1st DCA 1986); Carpenters R.V. Service v. Eckert, 455 So.2d 590 (Fla. 1st DCA 1984). It does not necessarily follow that a claimant's success on a causation issue entitles him to a particular disability status with its commensurate benefits.
In Koger the JCC denied PTD benefits based on a finding that there was no causal connection between the claimant's lack of employment and her industrial injury. Applying the above proposition, the court reversed the no causation finding based on the evidence that, due to her compensable injuries, the claimant could no longer work at the jobs in which she was trained and which she had held. Establishing the necessary causation, the court reversed the denial of PTD because the E/C did not adequately challenge the claimant's job search, there was no evidence that she *561 voluntarily limited her income, and because her vocational rehabilitation counselor testified that the claimant's medically established physical restrictions effectively precluded her from finding work nearby. The causation issue was a separate matter, the affirmative resolution of which was the sine qua non of a PTD status.
To establish entitlement to PTD benefits, as was sought in this case, the claimant must show either that he is unable to do light work uninterruptedly due to physical limitations, or that he has conducted a lengthy, exhaustive job search which has proved to be futile. E.g., H.S. Camp & Sons v. Flynn, 450 So.2d 577 (Fla. 1st DCA 1984). "Where there is no medical evidence that the claimant is unable to work, she is required to make a conscientious effort to return to work before she can establish that she is in fact unable to work." Walter Glades Condominium v. Morris, 393 So.2d 664, 665 (Fla. 1st DCA 1981). Since Dr. Nadler believed that claimant could perform the security guard job that U.S. Foundry offered him and that it would be in claimant's best interest to return to work, his testimony alone obviously does not provide a basis for a PTD award. See Buena Vista Palace v. Lopez, 557 So.2d 948 (Fla. 1st DCA 1990).
The JCC found that claimant was ill-suited to work as a security guard. In doing so he referred to the claimant's lack of interest in being a security guard and the claimant's belief that U.S. Foundry exhibited bad faith. In support of this finding he cited New Wales Chemicals, Inc. v. Parks, 518 So.2d 360 (Fla. 1st DCA 1987) and Viking Sprinkler Co. v. Thomas, 413 So.2d 816 (Fla. 1st DCA 1982). New Wales involved an E/C's refusal to provide rehabilitation benefits[1] because they had offered claimant a security guard job. This court affirmed the JCC's award of rehabilitation benefits holding that the security guard job was "not suitable employment for claimant so as to preclude him from receiving rehabilitation benefits." Id. at 363. In Viking Sprinkler we affirmed the JCC's award of rehabilitation benefits, stating that refusing rehabilitation benefits because of the availability of any employment, regardless of its suitability, is counter to the statutory goal of rehabilitation which is to return the employee to "suitable gainful employment." These cases do not apply to an analysis of a PTD finding. The issue before the JCC in the instant case was not claimant's entitlement to rehabilitation benefits but whether he was PTD.
Broward County Sheriff's Office v. Williams, 430 So.2d 968 (Fla. 1st DCA 1983) is similar to the instant case and guides our decision here. In that case the claimant was a deputy sheriff who suffered neck and back injuries resulting in a 30 percent permanent impairment to the body as a whole. At hearing on his claim for PTD benefits the employer offered claimant a job as a bailiff and the JCC continued the hearing to allow claimant to take the pre-employment physical examination and to attempt work as a bailiff. After the examination, his doctor concluded that he was capable of handling the job. Claimant, nevertheless, did not report for work, and at a subsequent hearing he asserted that he was unable to do the work because of the possibility of becoming involved in physical altercations. The court held:
The claimant is clearly not patently totally disabled, and there was no competent substantial medical evidence that claimant could not perform the duties of a civil bailiff. The claimant's own belief that he would be unable to handle the work of a bailiff cannot substitute for a good faith attempt to actually do the work.
Id. at 969. As in Broward County Sheriff's Office, there is no competent substantial medical evidence in the record that claimant could not perform the duties of security guard. Indeed, the medical evidence indicates the contrary. In addition, claimant made no effort to do the work offered; he merely expressed apprehension *562 about doing it. As such, there is no adequate basis for the PTD finding.
REVERSED and REMANDED with directions that the JCC enter an order requiring the E/C to allow claimant to attempt the offered employment. In doing so, we do not prejudice any entitlement claimant might have to wage loss and rehabilitation benefits.
BOOTH and WOLF, JJ., concur.
NOTES
[1] Section 440.49(1)(a), Fla. Stat., in pertinent part, requires employers or carriers to provide rehabilitation services when it appears that a compensable injury will preclude an employee from earning wages equal to wages earned prior to the injury.